J. J. PELHAM, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion filed Nov. 10, 1915.

1. In a prosecution for homicide, narrations of what the defendant had said to another person as to his being notified that the deceased had threatened him, are not admissible to prove that the defendant knew of recent threats against him made by the deceased, or to prove the defendant's state of mind when he saw the deceased just before the homicide.

Pelham v. State.—Opinion of Court.

2. Where in a homicide trial a defendant's testimony indicates that he may have been needlessly alarmed by the appearance of the deceased at the time of the tragedy with a gun which he was acustomed to carry, it is not material error, in a charge otherwise unobjectionable, to state that "men do not hold their lives at the mercy of unreasonable fears or excessive cowardice of others."

3. When otherwise unobjectionable, a charge that the defendant must have "used all reasonable means in his power consistent with his own safety, to avoid the danger and avert the necessity of killing" the deceased, is applicable where both the deceased and the defendant were at a place where they had a right to be, the reasonableness of the means used being for the jury to determine.

4. Where charges given cover a subject other charges on the same subject may be refused.

5. Where the evidence amply supports the verdict, it will not be disturbed.

Writ of Error to Circuit Court, Jackson County; D. J. Jones, Judge.

Judgment affirmed.

*John H. Carter* and *Will H. Price,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

WHITFIELD, J.—Pelham was convicted of murder in the second degree for killing Jim Martin with a shotgun, and took writ of error.

The homicide occurred at a mill, and Frank Fowler, a

witness for the defendant, who was at the mill with the defendant when the homicide occurred, testified that the reputation of the deceased for being a violent and quarrelsome man was bad.

The court excluded the following questions asked the witness Frank Fowler, viz: "Did you and Mr. Pelham, shortly before the arrival of Martin have a conversation in reference to Martin coming there about that time, if so state what was said?" "What was it that Mr. Pelham said to you that caused you to expect the presence of Martin at the mill about that time?"

The defendant testified that he had a talk with the witness Fowler just before Martin came up, with reference to Martin. But the court would not permit the conversation to be narrated though counsel for the defendant stated he purposed to prove the defendant had told Fowler of a threat made by the deceased the day before to kill defendant that day at the mill.

It is argued that these rulings constitute material errors in that the excluded testimony would have shown the defendant's last expressions before the homicide of his trouble with the deceased, which with the defendant's testimony as to his belief that his life was in danger when he fired the fatal shot, might have resulted in a verdict of a lower degree of homicide, or in an acquittal. But narrations of what the defendant said to another person as to his being notified that the deceased had threatened him, are not admissible to prove that the defendant knew of recent threats against him made by the deceased, or to prove the defendant's state of mind when he saw the deceased, just before the homicide. Besides there was ample evidence admitted as to the threats made by the de-

ceased, and the defendant testified as to his state of mind when he fired on the deceased, even though no overt act of the deceased was shown. The alleged errors are not sustained.

·Among the charges given by the court is the following: "Men do not hold their lives at the mercy of the unreasonable fears or excessive cowardice of others, and if from such notice the defendant killed Jim Martin, if you find that he did kill him, without any lawful reason for so doing, he could not justify his acts, if he committed any, as being in self defense unless he had used all reasonable means in his power consistent with his own safety, to avoid the danger and avert the necessity of killing Jim Martin, if he did kill him, and you are to determine from the evidence whether he has used such reasonable means. If you believe from the evidence that the defendant acted in his lawful self defense in killing Jim Martin, if you find he did kill him, or if you entertain a reasonable doubt whether the defendant was acting within his lawful rights of self defense, you should find him not guilty."

It is argued that the first portion of the charge is error: The language used is not unduly argumentative or hypothetical, since it has actual application to the issues and the evidence; and as the defendant's testimony indicated that he may have been needlessly alarmed by the appearance of the deceased at the mill with a gun which he was accustomed to carry, it is not clear that there was error in the reference made in the charge to nureasonable fears or excessive cowardice, since such expressions illustrated the rule of law on the subject. The statement of the charge that the defendant must have

"used all reasonable means in his power consistent with his own safety, to avoid the danger and avert the necessity of killing" the deceased is applicable in this case, the homicide having occurred at a mill where both parties had a right to be, the reasonableness of the means used to avoid the killing under the circumstances being for the jury to determine.   There appears to be nothing in the charge that is misleading.

Assuming that the charges, on the subject of the defendant's belief that his life was in imminent danger when he fired the fatal shot, that were refused, accurately state the law as applicable to the evidence, the subject is sufficiently covered by other charges that were given, therefore the refusals to give the requested charges were not erroneous.   There is ample evidence to sustain a finding that the defendant was not reasonably justified in firing on the deceased when he did, and in firing a second time when the deceased was going from the accused.

The conviction is of murder in the second degree, and the judgment should be affirmed.

TAYLOR, C. J. and SHACKLEFORD, COCKRELL and ELLIS, JJ., concur.